# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LOUISE I. TEUPELL,

    Plaintiff,

vs.                                                                                                                                                        Civil No. 96-1207 JC/WWD

KENNETH S. APFEL, Commissioner
of Social Security,

    Defendant.[1]

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed September 29, 1997 [8-1]. Plaintiff was denied her requests for Security Disability Insurance ("SSDI"), Supplemental Security Income ("SSI") and widow's benefits.[2] She alleges a disability as of May 3, 1993 due to the residuals of back surgery which she claims prevents her from sitting for long periods of time. Ms. Teupell has a GED and has past work experience as a data transcriber.

    2. The Appeals Council declined to review the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant

---

  [1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted for the Secretary of Health and Human Services who was the appropriate party at the time of the underlying decision. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

  [2] Although the claim for widow's benefits was filed two years subsequent to the other applications as well as the administrative hearing, the application was expedited so that it was included for consideration in the ALJ's decision. Tr. at 12.

to 42 U.S.C. §405(g).  Plaintiff was 49 years old at the time of her application in November 1993 and 51 at the time of the Commissioner's final decision.

    3.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

    4.   Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) that plaintiff's failed back fusion coupled with pain, bowel and urinary problems demonstrates that plaintiff had an impairment which met or equaled a listed impairment in severity and (2) the ALJ's finding that plaintiff was not disabled at any time through the decision was clearly erroneous given plaintiff's age, two spinal surgeries, her non-fused spine and her inability to perform sedentary work.

    5.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A)), 1382c(a)(3)(A).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability application.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

    6.   At the first four levels of the evaluation, the claimant must show:  (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the

ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

**Relevant Background**

7.  Plaintiff slipped and fell outside a restaurant in May 1993, injuring her back.  Tr. at 44, 45.[3]  She alleges that she continues to have a dull constant pain and muscle spasms.  Tr. at 102, 118-19.  The record also contains treatment notes which show that Ms.Teupell had visited Dr. Pettersson, her family physician, complaining of back pain a couple of years preceding the date of the accident, during the period of April 1991 to March 1993.  Tr. 53, 55, 56-57; see also Tr. at 50.  Dr. Pettersson diagnosed the problem as muscular back pain and prescribed anti-inflammatory medication and Parafon Forte.

8.  Plaintiff saw Dr. Mital for the first time a couple of days following the accident.  Tr. at 44.  The doctor's report stated that Ms. Teupell appeared to be "in some degree of discomfort."  Id.  Plaintiff complained of increased pain on coughing and sneezing and an inability to walk for any amount of distance and nights interrupted with pain.  She also complained of radiating pain as well as feelings of pins and needles.  Dr. Mital made a diagnosis of disc herniation at L2 and L5, and initially prescribed conservative treatment including physical therapy, from which plaintiff derived moderate results.  Id, 66-70.  A few months later, Dr. Mital recommended an L4-S1 surgical fusion, which was done in September 1993.  Tr. at 58.

9.  In February 1994, plaintiff again participated in a 12-session physical therapy program.

---

[3] Plaintiff has a claim pending against the restaurant.  Tr. at 98.

Tr. at 60-65. At first plaintiff obtained some relief, but later in the program she complained of increased pain in her back and right leg. No re-evaluation was done because Ms. Teupell missed the last two sessions. In May 1994, because of plaintiff's persistent symptomatology, Dr. Mital performed surgery again, this time to remove the metal fixation device and repair the fusion.

10. At the hearing, the plaintiff stated that the feeling of tingling and numbness resolved with the second surgery. Tr. at 118. However, she reported to Dr. Mital that on a 0 to 10 scale, she still had pain at a 7 - 9 level. Dr. Mital noted that she was not wearing a back brace during her visit and could not make any findings consistent with the nature or degree of pain plaintiff was having. He opined that somehow she had sprained her back and recommended that she continue a comprehensive back care program. He also provided plaintiff with a certificate recommending that she try to return to work gradually over the next two months, starting out part-time and progress to full-time. Tr. at 42.

11. Ms. Teupell tried returning to work at the Social Security Administration at the Teleservice center[4] in March to April 1995, but left after four weeks because of back pain which she stated caused her to miss about two days of work per week. Tr. at 98-99, 112. Plaintiff has not worked since.

12. According to the record, Ms. Teupell was last seen by a physician, Dr.Sidney Schultz, an orthopedic surgeon, in January 1995. She explained to Dr. Schultz that she had not

---

[4] Plaintiff began work for the Social Security Administration in February of 1983. Tr. at 80, 114. She was originally a data transcriber, which involved constantly keying information into a computer. Plaintiff considered the position she returned to in 1995 at the Teleservice center, where she used a headset and was on the phones all day, as "easier" in that she had to key in information only when needed. Tr. at 110, 115-16. Plaintiff also tried to return to her data transcribing job a few weeks after the accident at the restaurant, but left after two weeks.

been under a physician's care due to lack of insurance coverage. Tr. at 47.[5] During the exam, the doctor noted that plaintiff frequently shifted sitting position, "accompanied by altered facial expressions indicating discomfort." Id. Ms. Teupell stated that her low back pain continues, radiating from her back down through her left leg and to her ankle and toes. Tr. at 46. She also complained of numbness and tingling in the toes of the left foot. The back pain worsens on coughing and sneezing and especially when she is lying down, and was relative to her activity level. Id.

13. Plaintiff told Dr. Schultz that she cannot sit on anything low or soft or sit for any prolonged period of time. She can sleep through the night if she takes Ibuprofen. She cannot drive a car for prolonged periods of time. She can do light housekeeping, but cannot reach up very high or low. Id. She had hopes of returning to work, but to a "completely different job" and stated that she would have to "wait and see if I can do it or not." Tr. at 47.

14. Dr. Schultz' impression was that the cause of plaintiff's discomfort was possibly from a spinal fusion that was not solid. He also noted that there was no evidence of lumbar radiculopathy and that an MRI taken in June 1994 showed no disc herniation at any level. Tr. at 50. The doctor recommended that plaintiff was in need of a "definite weight reduction program" as well as a mild range of motion exercise program. He left work as an issue open for "future trial and observation." Id.

**First Alleged Error**

15. Plaintiff first alleges that she has demonstrated that her various problems constitute

---

[5] It appears that plaintiff was seen by Dr. Schultz on a consult related to her application for benefits, as the consult report is addressed to a local attorney.

an impairment which met or equaled a listed impairment in severity. The ALJ found that Ms. Teupell's impairments, singly or in combination, did not meet or equal in severity any disorder set forth in the listing of impairments. 20 C.F.R. Pt.404, Subpt.P,App.1.

16. Social Security regulations describe the disabilities in the Listing of Impairments as "impairments which are considered severe enough to prevent a person from doing any gainful activity." Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1988); 20 C.F.R. § 404.1525(a) (1982). The ALJ must determine that the medical findings are at least equal in severity and duration as those in the listed findings. Bernal v. Bowen, 851 F.2d 297, 300 (10th Cir. 1988); 20 C.F.R. S 404.1526(a).[6] Ms. Teupell as the claimant bears the burden at Step Three of establishing that her impairment(s) meets or equals a listed impairment. Muskgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992). The detailed objective observations included in the reports of both Dr. Mital and Dr. Schultz do not indicate a severity that would qualify as a listed impairment.[7]

17. Vertebrogenic disorders require pain, muscle spasm *and* significant limitation of motion in the spine *as well as* appropriate radicular distribution of significant motor loss with muscle weakness *and* sensory *and* reflex loss. App.1, § 1.05(C) (emphasis added). However,

---

[6] "Medical findings" include symptoms (the claimant's own description of his impairments), signs (observations of anatomical, physiological and psychological abnormalities which are shown by clinical diagnostic techniques) and laboratory findings. Bernal, 851 F.2d at 300; 20 C.F.R. § 404.1528 (1986). However, the claimant's descriptions alone are not enough to establish a physical or mental impairment. Id.

[7] Findings should "include a description of gait, limitation of movement of the spine given quantitatively in degrees from the vertical position, motor and sensory abnormalities, muscle spasm and deep tendon reflexes." App.1, § 1.00(B). Observation of the individual during the examination should also be reported. Id.

plaintiff's sensory and reflex findings were normal. Tr. at 47-48. She could stand on toes and heels as well as stand on either foot alone "without difficulty." Tr. at 47. Plaintiff complained of pain in the "operative area to a slightly greater degree than that on bending forward" and arose from a sitting position (e.g., from the examining table) with difficulty, but "walked without a limp." Id.

18. Although Dr. Schultz noted a moderate limitation in lumbar spine extension and a marked limitation in lateral bending, the motions "were unaccompanied by any complaint at all" and was able to straighten up from the flexed position "without difficulty." Tr. at 47. Lumbar radiculopathy or disc herniation was not evident from the June 1994 MRI. Tr. at 50.

19. Dr. Mital's objective findings upon examination were consistent with those of Dr. Schultz. Deep tendon reflexes were normal and there was no evidence of any sensory or motor deficit, or paraspinous muscle spasm. Tr. at 43. The physical examination showed some motion limitations for backward extension and bending to the left. Tr. at 44. Plaintiff had a mildly antalgic gait, but was able to walk on tiptoes and heels "without difficulty." Id. Similar to Dr. Schultz' finding, Dr. Mital saw "no reason. . . for a radiculopathy of the nature that the patient is complaining of." Id.[8] Thus, based on the evidence from the record, plaintiff has not shown that her back impairment qualifies as a listed impairment.

20. Plaintiff's alleged bowel and bladder problems do not change the picture any, even in combination with the back impairment. The "bowel" problem is really part of the same back pain which is exacerbated when plaintiff strains at stool or cleans herself following a bowel movement.

---

[8] Regulations require that physical examination findings to determine the existence of a medical impairment be based on "objective observations during the examination and not simply a report of the individual's allegation. . . ." App.1, § 1(B)(disorders of the spine).

Tr. at 47, 111.[9]  Plaintiff told Dr. Schultz that she "wets herself slightly when coughing or sneezing," Tr. at 47, which had not occurred prior to her back injury, Tr. at 111-12.  At the hearing, she mentioned that when these bladder accidents occurred at work, she would leave to go home and change, and not return to work that day.  Tr. at 112.

21.  Ms. Teupell did not volunteer any bowel or bladder control problems when she saw Dr. Mital, except for "increased discomfort in the low back, on straining at bowel movements." Tr. at 44.  There is no indication at all from any of the medical findings, or even from plaintiff's own testimony, that her stress incontinence or increased pain during bowel movements are of such severity so as to significantly limit her capacity to do work.   Thus, the ALJ did not err in determining that Ms. Teupell's impairments did not meet or equal a listed impairment.

**Second Alleged Error**

22.  Plaintiff also contends that the ALJ's finding that plaintiff was not disabled at any time through the decision was clearly erroneous given plaintiff's age, two spinal surgeries, her non-fused spine and her inability to perform sedentary work.  Plaintiff is not specific about which level in the sequential evaluation she disputes.  Because my examination of the ALJ's finding at the third step is covered above, I confine my inquiry to the ALJ's determination at Step Four at which the sequential evaluation ended.

23.  The ALJ concluded that Ms. Teupell has the residual functional capacity to perform at least sedentary work and to return to her past relevant work as a teleservice data entry clerk.  As with Step Three, Ms. Teupell bears the burden of demonstrating that she is unable to perform

---

[9] Plaintiff explained to Dr. Schultz that "it is really certain movements that bother her," e.g., coughing and sneezing.  Tr. at 47.

past relevant work as a data entry transcriber.  Muskgrave, 966 F.2d at 1376.

24.   The ALJ conducted a proper credibility analysis, first observing the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain before going on to examine other factors going to credibility.  See Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987) , cited in Williams v. Bowen, 844 F.2d 748, 754-55 (10th Cir. 1988) (Once determining that the appropriate nexus exists, the decision maker may assess the claimant's credibility and "decide whether he believes the claimant's assertions of severe pain").

25.   In his analysis, the ALJ took into account several relevant factors such as plaintiff's medical reports and treatment, relief obtained from treatment as well as daily activities. [10]   He noted that although her physicians' recommendations to return to work were guarded in that it should be gradual, there were no other restrictions placed on her abilities to return to a sedentary job, and he weighed the objective medical evidence alongside plaintiff's subjective complaints. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).

26.   The ALJ noted that plaintiff wears a soft brace "usually during the day," Tr. at 101, and obtained relief within a short time from non-prescription medications which she took at night and everyday if needed, from hot baths and menthol rubs and from massages given by her daughter at night.  Tr. at 13, 100, 119.  Plaintiff stated that she does light housework (vacuuming, dusting, washing dishes) and grocery shopping (leaning on the grocery cart for support), uses her

---

[10]   The ALJ must investigate all avenues presented that relate to subjective complaints, including nature, location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain, functional restrictions; and claimant's daily activities.  SSR-88-13.  Contrary to plaintiff's assertions, Mem. at 9, the ALJ did consider these factors and did not limit his inquiry to plaintiff's daily activities.

9

son and daughter's car to drive short distances,[11] but is a "homebody" and has no hobbies. Tr. at 102, 103, 109, 121. She can sit through a movie for one to two hours before her back begins to hurt, Tr. at 103, and can walk the length of the Coronado Mall before her legs start to feel "rubbery." Tr. at 116-17.

27. The ALJ did not ignore subjective complaints, but rather determined that given all the factors he was required to consider, her pain symptoms were exaggerated. Tr. at 13; 20 C.F.R. §§ 404.1529, 416.929 (claimant's statements about symptoms are not enough to establish disability). The Court ordinarily defers to the ALJ as trier of fact on credibility. Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (citations omitted). I see no reason not to do so here, based on the legal standard followed by the ALJ as well as the factors he relied on in coming to the conclusion that Ms. Teupell's complaints of pain were not credible. Thus, the ALJ's conclusion that Ms. Teupell's complaints of pain did not significantly reduce her residual functional capacity was based on substantial evidence.

28. However, I find that the subsequent inquiry into plaintiff's residual capacity at Step Four was deficient. See Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993) (in addition to credibility determination, ALJ must also determine whether the claimant has an RFC level and can perform the full range of work at her RFC level on a daily basis).[12]

29. The ALJ determined that Ms. Teupell has the residual functional capacity to return to

---

[11] Plaintiff lives in her own house with her grown son and daughter and the daughter's one-year old son.

[12] Defendant urges that the Court find the ALJ's decision at Step Four to be "clearly erroneous" in determining Ms. Teupell to be nondisabled. Because I recommend that the Step Four analysis be repeated, a finding that the ALJ's decision was clearly erroneous rather than lacking in substantial evidence would be premature at this point.

her job of teleservice data transcriber. As in Step Five, a Step Four inquiry looks into whether a claimant has the ability to do a full range of work on daily basis. While the claimant retains the burden of showing that he is disabled at step four, the ALJ has a duty "of inquiry and factual development." Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); SSR 82-62 (dictating that [Commissioner] make the necessary findings at phases two and three of the step four inquiry). The ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Id. In this case, the ALJ did not inquire into, or make findings related to the specific demands of Ms. Teupell's past relevant work as a teleservice data entry clerk, either as she actually performed the work or "as it is customarily performed in the national economy." Winfrey, 92 F.3d at 1023.[13]

    30. The ALJ did not discount or discredit Ms. Teupell's need for frequent position changes. In fact, in his decision that she had the ability to perform the teleservice data entry job, he nevertheless recognized that this position "was sedentary work which would allow for standing at intervals." Tr. at 14. This is an assumption which not only lacked any factual support from the record (e.g., from a vocational expert) but which evidence from the record refutes.

    31. In a letter addressing plaintiff's employment position and work history, her work manager, Dora Dominguez, stated that although plaintiff was reporting to work, she is "unable to perform her job as a Data Transcriber without continuous interruption." Tr. at 80. Ms. Dominguez observed that plaintiff's discomfort kept her from sitting for any length of time and required constant changing of postural positions. Plaintiff had also refused another position which

---

[13] At Step Four, the scope of jobs is limited to those that qualify as the claimant's past relevant work, unlike Step Five, where the scope broadens to encompass any jobs in the national economy. Winfrey v. Chater, 92 F.2d 1017 (10th Cir. 1996).

had been selected for her because, according to what she told Ms. Dominguez, she would be unable to sit for the 10 week - 8 hour a day training required for this position. Ms. Dominguez also stated that plaintiff's limitations make it difficult to accommodate her in any of the Teleservice Center positions, which are all sedentary. Id.

32. Particularly in light of this letter, the ALJ was hasty in concluding that plaintiff could return to her past job when her manager at that very job expressed serious doubts about plaintiff's ability to perform. The ALJ should have consulted a vocational expert to analyze the demands of the position. See also Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993) (where a claimant cannot sit or stand for prolonged periods of time, the ALJ must consult a vocational expert before making a determination).

33. On remand, the ALJ should consult a vocational expert for a complete Step Four inquiry, and include in the hypothetical presented to the expert not only plaintiff's postural limitation but also her stress incontinence. Although the latter impairment is not a significant limitation, hypothetical questions "must reflect with precision" all of a claimant's impairments which are borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996) (citing Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995)).

34. In sum, the ALJ did not err in determining that Ms. Teupell's impairments did not meet or equal a listed impairment. As to the second alleged error, the ALJ's conclusion that plaintiff could return to her past relevant work was not based on substantial evidence.

## Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [8-1] be granted so that a complete Step Four analysis, which includes a vocational consult, may be

conducted in order to determine whether the plaintiff can return to her former position as teleservice data entry clerk. If, upon remand, a determination is made that plaintiff can not perform this work, then the inquiry should proceed to a Step Five level of inquiry.

_____<br>UNITED STATES MAGISTRATE JUDGE